# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL CASE NO. 24 CR 168 (JDB)** |
| | : | |
| **ROBERT T. SMITH,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing. For the reasons herein, the United States requests that the Court sentence the defendant to a period of 33 months of incarceration; the government further requests that the Court impose a period of 3 years of supervised release. In support of this sentence, the government states the following:

### I.     Factual Summary

On March 14, 2024, members of the Metropolitan Police Department (MPD) were patrolling in the area of 5305 East Capitol Street, S.E., Washington, D.C. Officers approached the Defendant who had a cross-body bag. The police officer observed a bulge in the bag and asked the Defendant about the bulge. The Defendant stated that there was nothing in the bag. **(Figure 1).** The officer walked towards the Defendant. The Defendant then attempted to flee by running away from the officer but was immediately apprehended after taking a few steps. A search incident to arrest revealed a firearm in the Defendant's cross-body bag. **(Figure 2).** The retrieved firearm was a polymer 80 pistol with a Glock 23 slide, and was loaded with one round in the chamber and a total of nine rounds in the magazine.



*Figure 1*



*Figure 2*

## II.   <u>Procedural History</u>

On April 4, 2024, the Defendant was charged by indictment with Unlawful Possession of a

Firearm and Ammunition by a Person Convicted of a Crime Punishable by a Term Exceeding One

Year.  On April 8, 2024, the Defendant conceded detention and the Defendant was detained.  On June 7, 2024, the Defendant pled guilty to the sole count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by a Term Exceeding One Year in violation of 18 U.S.C. § 922(g)(1), which carries a maximum sentence of 15 years of imprisonment, a fine of $250,000, and a term of supervised release of not more than three years. *See* ECF No. 10.

### III.   <u>Sentencing Factors</u>

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a*).  See United States v. Gall*, 522 U.S. 38, 49 (2007).   Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a).   *United States v. Rita*, 551 U.S. 338, 348 (2007).   The Section 3553(a) factors include: (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

### A.  Defendant's Sentencing Guidelines Calculation

The government agrees with the United States Probation Office's assessment that the Defendant has a prior conviction for Voluntary Manslaughter, D.C. Superior Court case number

3

2018 CF1 17832.  Accordingly, his total criminal history score is 3 points, and he is therefore in Criminal History Category II.

### B.  Total Offense Level

The Defendant has demonstrated acceptance of responsibility for the offense and the offense level is decreased by two levels under U.S.S.G. § 3E1.1(a) and an additional level under U.S.S.G. § 3E1.1(b), for a total decrease of **3** levels.  However, the parties dispute the base level offense – specifically whether D.C. Code Voluntary Manslaughter is a § 4B1.2 crime of violence. U.S.S.G. § 4B1.2(a)(1), (a)(2).  The government agrees with the United States Probation Offices' assessment of the Offense Level Computation set forth in the PSR that the base level offense is **20** pursuant to U.S.S.G. §2.K2.1(a)(4)(A) because Voluntary Manslaughter is a crime of violence under both the force clause and the enumerated-offense clause of the Guidelines.  Thus, the Defendant's total offense level, after acceptance of responsibility, is **17**.

1. *D.C. Voluntary Manslaughter is a § 4B1.2 Crime of Violence under the Enumerated-Offense Clause Because It Matches Generic Voluntary Manslaughter*

"The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . is murder, voluntary manslaughter. . ." U.S.S.G. § 4B1.2(a)(2)(2). "To determine whether a past conviction is for one of those [enumerated] crimes, courts use what has become known as the categorical approach: They compare the elements of the statute forming the basis of the defendant's conviction with elements of the generic crime – i.e., the offense as commonly understood.  The prior conviction qualifies as a [crime of violence] only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps v. United States*, 570 U.S. 254, 257 (2013) (internal

quotation marks omitted); *see also Quarles v. United States*, 587 U.S. 645, 654-55 (2019) (applying categorial approach to enumerated offenses).

D.C. Code criminalizes "manslaughter" without further elaboration.  D.C. Code §22-2105 (2001 ed.) (stating that "[w]hoever is guilty of manslaughter shall be sentenced to a period of imprisonment not exceeding 30 years").  The D.C. Court of Appeals has long recognized Voluntary and Involuntary Manslaughter as separate crimes, *United States v. Bradford*, 344 A.2d 208, 216 (D.C. 1975), and the elements of both are defined by common law, *Donaldson v. United States*, 856 A.2d 1068, 1073 (D.C. 2004) (en banc).  As for the elements of D.C. Voluntary Manslaughter, "a homicide constitutes voluntary manslaughter where the perpetrator kills with a state of mind which, but for the presence of legally recognized mitigating circumstances, would render the killing murder." *Comber v. United States*, 584 A.2d 26, 42 (D.C. 1990) (en banc) (citing, among other authority, *Bradford*, 344 A.2d at 215).  Put another way, "voluntary manslaughter is a killing committed with an intent to kill or do serious bodily injury, or with a conscious disregard of an extreme risk of death or serious bodily injury, where the presence of mitigating factors precludes a determination that the killing was malicious. *Id.* at 47.  Similarly, D.C.'s pattern jury instructions break down the elements as follows: "1. [Defendant] caused the death of [decedent]; and 2. At the time s/he did so, [defendant] intended to kill or seriously injure [decedent or another person], or acted in conscious disregard of an extreme risk of death or serious bodily injury to [decedent or another person.]." 1 Criminal Jury Instructions for D.C., Instruction 4.212 (brackets omitted).[1]

---

[1] *See also Towles v. United States,* 115 A.3d 1222, 1232 n.16 (D.C. 2015); *Blaize v. United States,* 21 A.3d 78, 82 n.5 (D.C. 2011); *Williams v. United States,* 858 A.2d 984, 998 n.19 (D.C. 2004) (substantially similar formulations of the elements of D.C. Voluntary Manslaughter).

In formulating its definition of voluntary manslaughter, the *Comber* court rejected the government's contention that "voluntary manslaughter also encompasses…homicides resulting when a defendant acts with the intent to cause any injury to or apply any force against the victim." 584 A.2d at 43. Rather, "voluntary manslaughter involves only those homicides where the perpetrator's state of mind would constitute malice aforethought and the homicide murder, but for the presence of legally recognized mitigating circumstances." *Id* at 47. Thus, "[i]f the perpetrator's state of mind is not one which would constitute malice, the fact that he or she intends to inflict non-serious injury or otherwise direct force against the victim does not render a killing voluntary manslaughter;" it would be "governed by the involuntary manslaughter doctrines." *Id.* As a result, D.C.'s "definition of voluntary manslaughter reflects the traditional common law view and the prevailing national norm, as indicated by the formulations in numerous criminal law treatises." *Id*. at 42-43 (collecting authority).

The D.C. Court of Appeals holding that D.C. Voluntary Manslaughter reflects the common-law definition of the offense, *see Comber*, 584 A.2d at 42-43, suffices to make the offense a categorical match to 4B1.2 voluntary manslaughter. *See Quarles*, 587 U.S. at 649-50. But to the extent this Court seeks further confirmation from the federal courts, caselaw discussing generic voluntary manslaughter strongly supports this conclusion. *See United States v. Teague*, 884 F.3d 726, 728-730 (7th Cir. 2018) (holding Illinois second-degree murder statute qualifies under the elements clause of 4B1.2 and also qualifies as "voluntary manslaughter" under the enumerated clause); *United States v. Leaverton*, 895 F.3d 1251, 1257 (10th Cir. 2018) (noting that "[m]ost jurisdictions hold that first degree or voluntary manslaughter involves an intent to kill accompanied by the 'extenuating circumstances,'" and finding Oklahoma's "minority view" approach to not be a categorical match) (citations omitted); *United States v.*

6

*Gomez-Leon*, 545 F.3d 777, 791 (9th Cir. 2008) (noting that "[m]anslaughter itself was subdivided into two branches – voluntary manslaughter (intended homicide in a heat of passion upon adequate provocation) and involuntary manslaughter (unintended homicide under certain circumstances)") (quoting 2 Wayne R. LaFave, Substantive Criminal Law §15.4 (2d ed. 2007)). D.C.'s definition of voluntary manslaughter matches the generic view of manslaughter under these court's reasoning, as well.

> 2. *D.C. Voluntary Manslaughter is a § 4B1.2 Crime of Violence under the Force Clause Because it Categorically Involves the Use of Force and Requires a* Mens Rea *of at Least Extreme Recklessness*

The Guidelines also classify prior convictions as crimes of violence if they have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).   Here, defendant's D.C. Voluntary Manslaughter conviction required a *mens rea* of, at a minimum, extreme recklessness.   And, as the majority of authority on the question has concluded, extreme recklessness suffices under the elements clause.

The D.C. Court of Appeals has explained: "[A] homicide constitutes voluntary manslaughter where the perpetrator kills with a state of mind which, but for the presence of legally recognized mitigating circumstances, would render the killing murder…" *Id.* (citations omitted). Thus, "[k]illings classified as voluntary manslaughter would in fact be second degree murder but for the existence of circumstances that in some way mitigate malice." *Id.* (*quoting Bradford*, 344 A.2d at 215).

The D.C. model jury instructions for voluntary manslaughter require extreme recklessness. As the Ninth Circuit has explained, "extreme recklessness" exists where "the defendant acted with extreme indifference, and [] the indifference was toward human life." *See United States v. Begay*, 33. F.4th 1081, 1094–95 (9th Cir. 2022) (en banc). The D.C. standard—

conscious disregard of an extreme risk of death or serious bodily injury—is just another way of saying extreme indifference toward human life. *See, e.g.*, *Williams v. United States*, 858 A.2d 984, 998 n.19 (D.C. 2004) ("conscious disregard is conceptually identical to depraved heart malice"); *Comber*, 584 A.2d at 39 ("[I]n the District of Columbia, such depraved heart malice exists only where the perpetrator was subjectively aware that his or her conduct created an extreme risk of death or serious bodily injury, but engaged in that conduct nonetheless."); *see also Towles v United States*, 115 A.3d 1222, 1232 n.16 (D.C. 2015) (same); *Blaize v. United States*, 21 A.3d 78, 82 n.5 (D.C. 2011) (same). A defendant cannot be convicted of D.C. Voluntary Manslaughter based on a *mens rea* of ordinary recklessness. *See, e.g.*, *Comber*, 584 A.2d at 44 (rejecting the government's position that D.C. Voluntary Manslaughter could encompass a case where a defendant "acted with a mind free of any intent to kill or seriously wound and free of a degree of knowing recklessness making highly likely such a result").

The similarity between D.C. Voluntary Manslaughter and D.C. Second-Degree Murder reinforces the point. Under D.C. law, "second-degree murder is statutorily defined as the "kill[ing] of another 'with malice aforethought.'" *McKnight v. United States,* 102 A.3d 284, 287 (D.C. 2014) (quoting D.C. Code § 22-2103). "[M]alice aforethought" is "'a term of art embodying several distinct mental states': (1) 'the specific intent to kill,' (2) 'the specific intent to inflict serious bodily harm,' or (3) 'a wanton and willful disregard of an unreasonable human risk,' also known as 'depraved heart malice.'" *Id.* (*quoting Comber*, 584 A.2d at 38). Depraved heart malice "'exists only where the perpetrator was subjectively aware that his or her conduct created an extreme risk of death or serious bodily injury, but engaged in that conduct nonetheless.'" *Id.* (*quoting Comber*, 584 A.2d at 39). *See also United States v. Báez-Martínez*, 950 F.3d 119, 127 (1st Cir. 2020) (explaining that "[m]alice-aforethought-style recklessness falls somewhere

between ordinary recklessness and knowledge on the *mens rea* spectrum," and thus constitutes "heightened recklessness approaching knowledge").  D.C. Voluntary Manslaughter requires the same *mens rea* as D.C. Second-Degree Murder, and the only difference between the two crimes is the existence of legally recognized mitigating circumstances.  *Donaldson*, 856 A.2d at 1073. This fact is reflected in the D.C. Criminal Jury Instructions, where the only difference between the instructions for voluntary manslaughter and second-degree murder is the additional element for murder that there are no mitigating circumstances.  *Compare* 1 Criminal Jury Instructions for D.C., Instruction 4.211 (2022) (second-degree murder), *with id.* at 4.212 (voluntary manslaughter). In short, it is abundantly clear that D.C. Voluntary Manslaughter cannot be committed with a *mens rea* below extreme recklessness.

While the Supreme Court recently held that offenses requiring only ordinary recklessness do not categorically satisfy the elements clause, it expressly reserved judgment on whether "extreme recklessness could qualify as a 'use of force.'"  *See Borden v. United States*, 593 U.S. 420, 429 n.4 (2021) (finding intentional or knowing mental states satisfy the elements clause). D.C. courts have recognized that every Circuit to address this issue have ruled that extreme recklessness qualifies as a crime of violence.  *See United States v. West*, 68 F.4th 1335, 1340 n.11 (D.C. Cir. 2023) ("a question that has been answered in the affirmative by those post-*Borden* circuits to address it") (citing *United States v. Manley,* 52 F.4th 143 (4th Cir. 2022) *cert. denied*, 143 S.Ct. 2436 (2023); *United States v. Harrison*, 54 F.4th 884 (6th Cir. 2022); *United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022) (en banc); and *Alvarado-Linares v. United States*, 44 F.4th 1334 (11th Cir. 2022)); *see also Brewer v. United States*, 89 F.4th 1091 (8th Cir. 2024) (holding that because voluntary manslaughter under 18 U.S.C. § 1112 requires more than

ordinary recklessness it is a 924(c) crime of violence);[2] *United States v. Draper*, 84 F.4th 797 (9th Cir. 2023) (same; holding that the required proof of "depraved heart" is akin to extreme recklessness that qualifies under the elements clause); *Janis v. United States*, 73 F.4th 628 (8th Cir. 2023) (finding that depraved heart second-degree murder in violation of 18 U.S.C. §1111(a) is a crime of violence for 924(c) force clause); *United States v. Kepler*, 74 F.4th 1292, 1303-12 (10th Cir. 2023) (same); *United States v. Harrison*, 54 F.4th 884, 890 (6th Cir. 2022) (holding that Kentucky statute requiring proof of "wantonness under circumstances manifesting extreme indifference to human life" satisfies the elements clause of 18 U.S.C. § 3559(c)(2)) (internal quotation marks omitted); *United States v. Baez-Martinez*, 950 F.3d 119, 127–28 (1st Cir. 2020) (finding that Puerto Rico "depraved heart" second-degree murder qualifies as a crime of violence under the ACCA, and so holding before *Borden* was decided); *United States v. Torres*, No. 1:19-CR- 3333-WJ, 2023 WL 2821562, at *3 (D.N.M. Apr. 7, 2023) (holding that crimes requiring extreme recklessness satisfy the elements clause "accords with the context and purpose of § 3559(f)(1) as well as common sense"). Accordingly, this Court should hold that D.C. Voluntary Manslaughter is a § 4B1.2 crime of violence and accept the calculation of the Defendant's Base Level Offense under § 2K2.1(a)(4).

## C.  Defendant's History and Characteristics

The Defendant killed someone because he was extremely reckless with a firearm.  In 2018 CF1 17832 he pled guilty to voluntary manslaughter-firearm where he was sentenced to 72 months of incarceration and 5 years of supervised release.  In that case, the Defendant was at his residence with the decedent in his bedroom.  He began waiving his gun and attempted to take a photograph with his phone when he accidently fired the gun.  The bullet struck the decedent in

---

[2]        Since the elements clause of § 924(c) is indistinguishable from the elements clause of § 4B1.2 cases considering the issue relative to 924(c) are instructive on this point.

the neck, killing her.  The Defendant served his sentence, was released on February 8, 2024, and instead of reintegrating back into society and obeying the law, he immediately – ***less than a month after his release*** – obtained and carried yet another firearm that places both himself, and others around him, at risk.  The Defendant clearly learned nothing from the death of the decedent or during his time in jail.  Moreover, he has shown that he has no intention of changing his behavior.

The Defendant should be sentenced to the top of the guidelines.  It is clear that he has not been rehabilitated, nor have his actions given the Court any reason to think he will conform his behavior to the norms of society.  Even in the instant case, the Defendant ran with a loaded firearm – including with a round in the chamber, ready to be fired with a single pull of the trigger – as he tried to evade police, where yet another accidental discharge easily could have occurred.  Simply put, the Defendant has not learned anything from his prior incarceration.

Courts have emphasized the *inherent* dangerousness of carrying a concealed, loaded firearm on one's person.  *See United States v. Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *see United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence).  The Defendant's crimes are not isolated from the community he lives in, rather they directly affect the community and the people who live in it.  In Washington D.C., the rate of violent crimes committed with guns in the continues to rise: between September 17, 2021 and September 17, 2024, violent crimes committed with a gun went up by 2,281 citywide compared to the previous three years.  *See Crime Cards*, Metropolitan Police

Department, https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/3:years/citywide:heat (last visited Sept. 17, 2024).   With violent crime increasing it is particularly crucial that the sentence imposed "reflect the seriousness of" the offense and "afford adequate deterrence to criminal conduct."  18 U.S.C. § 3552(a)(2)(A), (B).

### D.    Sentencing Disparities

According to the Justice Sentencing Information website, within the last five years, there were 657 defendants whose primary guideline was §2K2.1, with a Final Offense Level of 17 and a Criminal History Category of II (after excluding defendants who received a §5K1.1 substantial assistance departure).  Of those, 604 defendants (92%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 24 months and the median length of imprisonment imposed was 27 months.  *See* Judiciary Sentencing INformation, https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last visited Sept. 30, 2024).

In the instant case, the Defendant should be sentenced to the top of the guidelines.  This Defendant in particular knows about the danger of possessing a firearm.  The Defendant was incarcerated for killing someone.  Weeks after his release, he was again in possession of a firearm and as already mentioned above, fled from the police.  The Defendant has clearly demonstrated that he will not comply with the law and should be sentenced to 33 months of incarceration.

### IV.   Conclusion

For the foregoing reasons, the government recommends that the Court sentence the Defendant to a sentence of 33 months of incarceration to be followed by a term of 3 years of supervised release.  The government submits that a sentence of 33 months of imprisonment is an appropriate sentence, which serves to protect the community, punish the Defendant for his

criminal conduct, and deter others from committing similar offenses, while also affording the defendant an opportunity at rehabilitation. The government submits that a sentence of 33 months serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

Respectfully Submitted,
MATTHEW GRAVES
UNITED STATES ATTORNEY

BY:    _____/s/____

SHEHZAD AKHTAR
D.C. Bar No. 493635
Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-7498
E-mail: Shehzad.Akhtar@usdoj.gov

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel Alexis Gardner, via the electronic case filing system, this 30th day of September, 2024.

_____/s/____

SHEHZAD AKHTAR
Assistant United States Attorney